PEOPLE v PATRICK

Docket No. 102313. Submitted May 1, 1989, at Detroit. Decided July 6, 1989.

Michael S. Patrick was convicted of delivery of 225 grams or more, but less than 650 grams, of cocaine following a jury trial in the Recorder's Court for the City of Detroit. The trial court, Michael J. Talbot, J., sentenced defendant to from twenty to thirty years imprisonment. Defendant appealed.

The Court of Appeals *held:*

1. The trial court properly ruled that the defendant was not entrapped.

2. The trial court's instruction to the jury regarding the defense of entrapment, if erroneous, was harmless error.

3. The trial court did not err in declining to instruct the jurors that they had the power to acquit defendant even though there was undisputed evidence of his guilt.

4. The trial court properly declined to give defendant's requested jury instructions on possession of 50 grams or more, but less than 225 grams, of cocaine and possession of less that 50 grams of cocaine. There was no evidence to support conviction of possession of an amount of cocaine less than 225 grams.

Affirmed.

1. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST.

Michigan has adopted an objective test for entrapment which focuses on the propriety of the government's conduct which resulted in the charges against the defendant rather than the defendant's predisposition to commit the crime; entrapment occurs, regardless of the character of the person induced, where the government agent's involvement in criminal activity goes beyond the mere offering of an opportunity to commit a crime and instead induces or instigates the commission of a crime by one not ready and willing to commit it.

REFERENCES

Am Jur 2d, Criminal Law §§ 202-209; Drugs, Narcotics, and Poisons §§ 40, 41, 43, 45; Evidence § 1160

Burden of proof as to entrapment defense. 52 ALR4th 775.

Modern status of law concerning entrapment to commit narcotics offense—state cases. 62 ALR3d 110.

2. CRIMINAL LAW — ENTRAPMENT — QUESTION OF LAW.

 The determination whether entrapment has occurred is a question of law for the trial court to decide following an evidentiary hearing conducted outside of the jury's presence; the defendant has the burden of establishing entrapment by a preponderance of the evidence; the trial court's findings of fact following an entrapment hearing will be reversed only if they are clearly erroneous.

3. CONTROLLED SUBSTANCES — COGNATE OFFENSES — POSSESSION — DELIVERY.

 Possession of a controlled substance is a cognate offense of delivery of a controlled substance.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*James D. O'Connell,* for defendant.

Before: GILLIS, P.J., and MICHAEL J. KELLY and R. B. BURNS,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of delivery of 225 grams or more, but less than 650 grams, of cocaine, MCL 333.7401(1) and (2)(a)(ii); MSA 14.15(7401)(1) and (2)(a)(ii). Defendant was sentenced to twenty to thirty years imprisonment. Defendant appeals as of right. We affirm.

Defendant claims that the circuit court erred when it ruled that he was not entrapped. Michigan has adopted an objective test for entrapment. *People v Turner,* 390 Mich 7, 22; 210 NW2d 336 (1973). That test focuses on the propriety of the government's conduct which resulted in the

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

charges against the defendant rather than the defendant's predisposition to commit the crime. *Id. People v D'Angelo,* 401 Mich 167, 172; 257 NW2d 655 (1977). If the government agent's involvement in criminal activity goes beyond the mere offering of an opportunity to commit a crime and instead induces or instigates the commission of a crime by one not ready and willing to commit it, regardless of the character of the person induced, entrapment has occurred. *Turner, supra,* p 21, quoting *United States v Russell,* 411 US 423, 445; 93 S Ct 1637; 36 L Ed 2d 366 (1973) (STEWART, J., dissenting). In such a situation the government has engaged in impermissible manufacturing of a crime and the courts should bar the prosecution to preserve the institutional integrity of the criminal justice system. *Id.*

Whether entrapment has occurred is a question of law for the trial court to decide. *D'Angelo, supra,* p 177. When the defendant raises the issue of entrapment the trial court is required to conduct an evidentiary hearing outside of the jury's presence and decide the issue. *Id.* at 177-178. Defendant has the burden of establishing entrapment by a preponderance of the evidence. *Id.* at 183. The trial court's findings of fact following the entrapment hearing will be reversed only if they are clearly erroneous. *Id.*

At the entrapment hearing, Eugene Bernard, defendant's coworker at Chrysler Corporation, testified that he met a man named Ron, who eventually turned out to be a police informant, at a bar owned by Bernard's brother-in-law. Vic, the bartender, introduced Ron to Bernard as his brother. Bernard had heard that Ron was a lucky bettor. While Bernard's testimony was contradictory, it appears that Bernard took bets for defendant from others and, even though defendant allegedly did

not know that Bernard took bets from other people, he gave Bernard monetary "tokens."

Ron began placing bets with Bernard during the World Series. Bernard claimed that he did cocaine with Ron once or twice or several times. Bernard claimed that Ron supplied cocaine on one occasion, which Bernard used outside of Ron's presence. Bernard could not remember who supplied the cocaine first.

Even though Ron allegedly had a source for cocaine because he had supplied it to Bernard, Ron asked Bernard for cocaine in mid-October because he and his girlfriend were going up north. Bernard told Ron that, although he did not know anyone at the present time, he would see what he could do and, if he ran across anybody, he would obtain some cocaine for Ron.

Bernard claimed that he purchased three grams of cocaine with $250 of his own money from an unknown man in a factory parking lot. Bernard delivered the cocaine to Ron for $250.

In the first week of November, Bernard went out of town. At that time, Ron owed $300 in gambling debts. Bernard gave Ron defendant's telephone number so that he could bet during Bernard's absence. Bernard told defendant to expect a call from Ron, who was employed as a roofer.

When Bernard returned five days later, Ron owed approximately $4,000 in gambling debts. Ron told Bernard that he did not have the money and that he could pay off the debt if Bernard could get him a large quantity of cocaine which Ron's friend, who worked for United Parcel Service, would sell. Bernard told Ron: "Well, I don't know. I'll see what I can do." Bernard claimed that Ron called him between six and ten times making the same request. Bernard put Ron off by telling him: "Well, I'll try. I'll see what I can do." Bernard also

claims he told Ron: "Well, I can't get any [cocaine]. I have to talk to Mike [defendant] and see what I can do."

Bernard also claims that Ron's friend, who worked for United Parcel Service and who later turned out to be Livonia Police Officer John Golembiewski, called him three times wanting to know if he was getting the cocaine. Bernard told him that he was looking for it.

At one time, defendant told Bernard that he would have to pay Ron's gambling debt. Bernard did not remember talking to defendant about Ron's requests for cocaine.

Despite pleading guilty to delivery of seven grams of cocaine to Ron at another location and on a different date, Bernard admitted delivering only three grams to Ron at a different location and on a different date. While Bernard claimed that he had only delivered cocaine once and that delivering cocaine was an unusual event in his life, he could not remember making a second delivery to Ron.

At the entrapment hearing, defendant testified that he would take bets from others, but nothing big until he talked to Ron. The first weekend that Bernard was out of town, Ron acquired $800 in gambling debts. By the second weekend, Ron owed defendant $3,770 in gambling debts. Defendant thereafter refused to take any more bets from Ron.

Bernard returned and told defendant a few times that Ron did not have the money. Defendant called Ron and Ron called defendant. Defendant asked Ron about his money. Ron told defendant that he had some money in a bank account, but that he was going to Florida and did not want to ruin his vacation. Defendant then offered to let Ron pay him $50 a week. Ron responded by offering to sell cocaine to pay off the debt if defendant

knew anyone that could get it. Defendant told Ron he could not get any.

Ron called defendant five or six times from approximately mid-November until the first week in December and repeatedly asked for cocaine to sell through his friend at United Parcel Service so that he could pay his gambling debt. Ron mentioned Bernard in one of their conversations and defendant told Ron that he did not think that Bernard could get him such a large quantity of cocaine.

Defendant "got madder and madder" about the gambling debt and at the end of the month decided to try and get the cocaine. After his third, fourth, or fifth conversation with Ron, defendant told him that he thought he could get him some cocaine.

Defendant arranged to meet Ron and Golembiewski at a bar on December 3. Defendant gave Golembiewski a sample and made plans to deliver the rest. Defendant might have told Golembiewski: "No one would be present for this deal, but if I'm doing five to ten keys, then I bring an army." Defendant also told Golembiewski that he should check for "a wire," although he did not. Finally, defendant told Golembiewski that there was a money back guarantee if he did not like the cocaine.

Defendant claimed that he obtained the cocaine from another coworker by telling him that it was for a very close family friend. At first, the coworker was reluctant because defendant had not previously asked for cocaine, but that coworker relented.

Defendant also claimed that he had "laid off" $1,300 of Ron's bets to another bookie. This bookie was not pressuring defendant for money.

Defendant delivered approximately one pound of

cocaine to Golembiewski on December 5 in exchange for $32,000 (i.e., sixteen ounces of cocaine at $1,800 per ounce plus $3,500 in gambling bets, rounded off to the nearest thousand). Defendant testified that he sold the cocaine to make back the money he lost on the gambling debt and to make a profit.

The trial court found that Bernard supplied cocaine to Ron. When Bernard left town, he gave Ron defendant's telephone number. Ron accumulated a substantial gambling debt during Bernard's absence. When Bernard returned, Ron offered to pay off his gambling debts by selling cocaine. Defendant then told Ron that Bernard could not handle the large quantity of cocaine that Ron wanted. Defendant then stepped in and arranged the drug transaction to recoup his gambling losses and because he wanted to make a profit. The trial court then held that defendant was not entrapped.

On appeal, defendant again contends that he was entrapped because Ron ran up a large gambling debt, called him on the telephone several times, and suggested that he become involved in a cocaine transaction to recoup his losses, even though he was not suspected of prior involvement in drug transactions.

We begin by distinguishing the instant case from *People v Killian,* 117 Mich App 220, 223; 323 NW2d 660 (1982), lv den 414 Mich 944 (1982), where the police had reason to believe that the defendant did not sell cocaine and was merely a drug user who could easily be persuaded to engage in drug sales for monetary gain. Likewise, we note that this case did not involve an informant's exploitation of a long-term friendship or family relationship. *People v Gratzer,* 104 Mich App 705; 305 NW2d 300 (1981), lv den 411 Mich 961 (1981); *People v Ramon,* 86 Mich App 113; 272 NW2d 124

(1978). Here, defendant had only spoken to Ron on the telephone several times before agreeing to obtain cocaine. See *People v Hentkowski,* 154 Mich App 171; 397 NW2d 255 (1986). Similarly, defendant's claim that Ron's conduct toward and with Bernard entrapped defendant is without merit insofar as he was unaware of that conduct. Compare *People v Soltis,* 104 Mich App 53, 55; 304 NW2d 811 (1981), modified on other grounds 411 Mich 1037 (1981), with *People v Weatherford,* 129 Mich App 359; 341 NW2d 119 (1983), lv den 417 Mich 1100.33 (1983).

Moreover, we cannot say that Ron's indebtedness to defendant or defendant's indebtedness to another bookie, which was unknown to Ron or the police, constituted entrapment. In any event, we note defendant was under no pressure to pay the other bookie and, at that time, defendant had had a job with Chrysler Corporation for nineteen years. As to Ron's indebtedness, defendant had suggested that Bernard, who was a coworker, might be held responsible and, in fact, defendant had offered Ron, who defendant knew was employed as a roofer, the opportunity to pay back the debt in weekly $50 installments. Ron had also told defendant that he had money in a bank account, but wanted to use that money for a Florida vacation, which defendant apparently did not wish to ruin. Instead, defendant chose to obtain one pound of cocaine and have Ron's friend sell it so that he could eliminate Ron's gambling debt and garner a substantial profit. Defendant even offered Golembiewski a money-back guarantee if the cocaine was not satisfactory. Under these circumstances, we believe that the trial court properly held that defendant was not entrapped.

Defendant also claims that the trial court erred when it instructed the jury:

The defense in this case, Mr. Patrick that is, advanced a theory of entrapment. I conducted a hearing. I took testimony. Entrapment is a legal theory. It's a matter of law. It's for a judge to rule on in Michigan. I ruled on it. I found there was no entrapment. It is not a question before you. I am not trying to keep anything that is relevant from you. And I am certainly not trying to comment on what I believe the truthfulness or veracity of a given witness is or the quality of the individual case, or the lack of evidence as to the individual case. But if in point of fact Michigan law says that entrapment is for me to decide, and I decided it, I am not going to let that issue in effect be argued to you. That's the distinction here. I'm not trying to keep something from you. But I am trying to control that which is appropriate for your determination as fact finders versus what is a determination that I already made as a matter of law.

The following day, defendant continued to object to the trial court's instruction, noting that "it's common knowledge that entrapment says we did it but there's a legal reason" why the defendant's actions will not result in conviction. The trial court found that it was not common knowledge and that it properly gave the instruction when defendant tried to raise the issue of entrapment before the jury.

We note that in this case defendant also made a motion to present his entrapment defense to the jury which was properly denied by the trial court. *D'Angelo, supra,* pp 178-179. We agree with the trial court that such an instruction may be given when defendant attempts to reargue the issue to the jury and the prosecutor's objections to the relevancy of certain testimony as well as the trial court's orders sustaining those objections make it appear that something is being kept from the jury. While the trial court could have further instructed

the jury that entrapment did not involve an assessment of defendant's guilt or innocence, we hold that any error in the trial court's failure to so instruct the jury was harmless since the issue of defendant's guilt or innocence was submitted to the jury and defendant admitted he was guilty of the crime.

Defendant also claims that the trial court erred when it declined to instruct the jurors that they had the power to acquit defendant even though there was undisputed evidence of his guilt. We disagree. *People v St Cyr,* 129 Mich App 471, 472-474; 341 NW2d 533 (1983), lv den 419 Mich 860 (1984).

Finally, defendant claims that the trial court erred when it refused his requests to instruct the jury on what he refers to as necessarily lesser included offenses. At trial, defense counsel asked the court to instruct the jury on lesser included offenses. Defense counsel did not specify which lesser-included offense instructions he wanted. When pressed by the trial court, defense counsel indicated that possession offenses involving less than 225 grams of cocaine would be such lesser-included offenses. The trial court stated that defendant had stipulated that there were 438.892 grams of cocaine. Defendant argued that he had only stipulated that if the chemist were called to testify he would testify that there were 438.892 grams of cocaine. The trial court disagreed and, in any event, noted such instructions were not applicable.

Possession of a controlled substance is a cognate offense of delivery of a controlled substance. *People v Austin* and *People v Harrison,* 405 Mich 482, 497-499; 275 NW2d 777 (1979); *People v Leighty,* 161 Mich App 565, 578; 411 NW2d 778 (1987), lv den 430 Mich 895 (1988). Even without defendant's alleged stipulation, there was no evidence to sup-

port conviction of possession of an amount of cocaine less than 225 grams and, therefore, the trial court properly declined to give defendant's requested instructions on possession of 50 grams or more, but less than 225 grams, of cocaine and possession of less than 50 grams of cocaine. *Leighty, supra,* p 578.

Affirmed.