PEOPLE v McGEE

Docket No. 215576. Submitted March 13, 2001, at Detroit. Decided August 31, 2001, at 9:20 A.M. Leave to appeal sought.

William C. McGee was convicted by a jury in the Oakland Circuit Court, Jessica R. Cooper, J., of two counts of delivering less than fifty grams of cocaine, one count of delivering fifty grams or more but less than 225 grams of cocaine, and one count of delivering an imitation controlled substance. The defendant appealed, alleging, in part, that the trial court erred in reinstating the jury's verdict after the court had both declared a mistrial sua sponte and dismissed the jury when the court discovered that a juror who had been excused had been in the jury room while the twelve remaining jurors deliberated. The court later recalled the jurors and polled them regarding their verdict. The court also questioned the excused juror regarding that juror's involvement in the jury's deliberations. The court then reversed its decision declaring a mistrial and accepted the jury's verdict.

The Court of Appeals *held*:

1. No manifest necessity existed that required the court to declare a mistrial at the time the court learned of the thirteenth juror. The court's initial declaration of a mistrial without the defendant's consent was an abuse of discretion.

2. The court did not abuse its discretion in determining that the mistrial was declared erroneously and in vacating its declaration of a mistrial.

3. The court did not have the authority to recall the jury and continue the polling once the jury was discharged.

4. Because there was no valid verdict to reinstate, the court erred in reinstating the jury's verdict. The defendant's convictions must be reversed.

5. Manifest necessity justifying a retrial may be found where a conviction would be reversed on appeal because of an obvious procedural error in the trial. The repolling of the discharged jury and the reinstatement of an invalid verdict are procedural errors mandating reversal in this matter. Although the court correctly found that the presence of the thirteenth juror did not create manifest necessity, the court's subsequent attempts to correct its erroneous

declaration of a mistrial did create manifest necessity that would allow the retrial of this case. The Court of Appeals has the discretion to declare a mistrial and reverse and remand for a retrial where, as here, the record indicates the existence of manifest necessity. A mistrial must be declared in this case and the matter must be reversed and remanded for a new trial.

6. The court properly found that the defendant was not entrapped and that the defendant was not denied due process as a result of the delay by the police in arresting the defendant. The evidence of the drugs purchased from the defendant was properly admitted.

Reversed and remanded.

1. CRIMINAL LAW — TRIAL — MISTRIAL.

A criminal defendant's silence in the face of a trial court's declaration of a mistrial is not to be construed as consent by the defendant.

2. CRIMINAL LAW — TRIAL — MISTRIAL.

A trial court's declaration of a mistrial may be justified only by a finding of manifest necessity where the criminal defendant does not consent to the declaration; manifest necessity may be found where there are sufficiently compelling circumstances that would deprive the defendant of a fair trial or make its completion impossible.

3. CRIMINAL LAW — TRIAL — MISTRIAL — RESCISSION.

A trial court has the discretion to declare a mistrial and to subsequently rescind an erroneous declaration of a mistrial as long as no judgment has been entered in the case; the court's subsequent decision to vacate an erroneous declaration of a mistrial is reviewed for abuse of discretion (MCR 6.435[B]).

4. CRIMINAL LAW — JURY — RECALL.

The jury in a criminal case, once discharged, may not be recalled in order to alter, amend, or impeach its verdict; a court may not recall a jury to complete the polling process where the jury was discharged before the polling process was complete.

5. CRIMINAL LAW — TRIAL — VERDICT.

A verdict is not final until it is announced in open court, assented to by the jury, and accepted by the trial court (MCR 6.420).

6. CRIMINAL LAW — TRIAL — RETRIAL — MISTRIAL — MANIFEST NECESSITY — APPEAL.

A retrial for an offense is prohibited if a first trial was concluded prematurely unless the defendant consented to the interruption or a mistrial was declared because of manifest necessity; manifest necessity generally can be found where compelling circumstances

would deprive the defendant of a fair trial or make completion of the trial impossible, where an impartial verdict cannot be reached, or where a conviction would be reversed on appeal because of an obvious procedural error; the Court of Appeals may declare a mistrial and reverse and remand the matter for a retrial where the record indicates the existence of manifest necessity (MCR 7.216[A][7]).

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *David G. Gorcyca,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Thomas R. Grden,* Assistant Prosecuting Attorney, for the people.

*Neil J. Leithauser* and William C. McGee, in propria persona.

Before: DOCTOROFF, P.J., and HOLBROOK, JR., and HOEKSTRA, JJ.

DOCTOROFF, P.J. Defendant appeals as of right his convictions on two counts of delivery of less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv), one count of delivery of an imitation controlled substance, MCL 333.7341(3), and one count of delivery of fifty grams or more but less than 225 grams of cocaine, MCL 333.7401(2)(a)(iii). Defendant claims that, among other assertions of error, the trial court erred in deciding to reinstate the jury's verdict after declaring sua sponte a mistrial. We agree and reverse and remand for proceedings consistent with this opinion.

I

In March 1998, the Pontiac police arrested defendant following four incidents in which defendant allegedly sold cocaine or an imitation controlled sub-

stance to undercover police officers. Defendant was tried before a jury on September 29 and October 1, 1998. After reading the jury instructions, the court randomly selected one of the remaining thirteen jurors[1] to become the alternate and excused that juror. After the jury returned with a verdict and the foreperson read the verdict in court, defense counsel asked that the jury be polled. During the polling, the trial court realized that there were thirteen jurors present and, upon questioning, discovered that the juror who was excused had been in the jury room during deliberations. When asked why she entered the jury room, the excused juror replied "I was not instructed to do anything different." The court did not further question the juror.

The court and the parties then engaged in an off-the-record conference at the bench. Immediately following this bench conference, the court dismissed the jury and declared a mistrial, stating:

> I just knew this wasn't going to be a good day. We have a mistrial.
>
> Mr. McGee, there were thirteen jurors who voted for your guilt, as opposed to twelve, and that is why we have a mistrial, because someone couldn't count when they were sending the jury into the jury room. But that's okay. We'll try this again, starting tomorrow.

At this point, defendant did not object to either the court's declaration of a mistrial sua sponte or its decision that the case would be retried.

When the parties returned on October 2, 1998, the court announced that it did not believe the case

---

[1] When the trial began, there were fourteen jurors. One juror was excused for medical reasons on the second day of trial.

would need to be retried and that, instead, the jurors could be brought back in and repolled and the verdict could be reinstated. The court noted that the bench conference conducted after discovery of the thirteenth juror was not on the record and asked the parties what their recollection was of the discussion. Both the prosecutor and defense counsel stated that they believed that they did not respond either affirmatively or negatively to the court's indication that it would declare a mistrial.[2]

The court then informed the parties that on the basis of its research, it believed that a mistrial was not necessary where there is an extra juror and that it should either recall the jurors to complete the polling and reinstate the verdict or proceed to a retrial. Defendant argued that reinstating the verdict was not

---

[2] The pertinent section of the record was as follows:

*The Court.* Do you recall what you said? Do you recall what [defense counsel] said?

*Prosecutor.* I don't believe that we responded, Judge.

\*    \*    \*

*Prosecutor.* I was shocked, and to be honest, Judge, I wasn't sure of the law on it, so I didn't know. I trusted the Court's rulings. I didn't object nor did I affirm.

*The Court.* And [defense counsel]?

*Defense counsel.* That's my recollection. I know I didn't affirm — respond affirmatively. When the Court said we have a mistrial, I think I did this, a slight nod, acquiescing in the Court's statement.

*The Court.* There was a nod? You didn't protest?

*Defense counsel.* No, I did not.

*The Court.* All right. That's accurate so that we now have that on the record?

*Defense counsel.* To the best of my recollection.

*Prosecutor.* Right.

*The Court.* That's the best of your recollection?

*Prosecutor.* Yes, Judge.

possible because the declaration of a mistrial rendered nugatory all trial proceedings, citing *People v Hamm*, 100 Mich App 429; 298 NW2d 896 (1980). The court concluded that because the verdict was rendered, this case was distinguishable from *Hamm*. When defendant countered that no verdict was rendered because the polling was not completed, the court stated that "[t]he verdict was rendered when (a) we have a marked verdict sheet and (b) when the . . . foreman indicates that that is the verdict of the jury. The polling is simply a verification." Defendant also moved for a dismissal of the charges, arguing that a retrial after a mistrial is possible only where the mistrial was a manifest necessity, and no such manifest necessity existed in this case. However, the court found that defendant acquiesced in the mistrial and, even if no manifest necessity existed, double jeopardy would not be a problem here where no retrial would take place.

On October 9, 1998, the court recalled the jurors by subpoena to complete the polling. Before starting the polling, the court noted that "[w]e do have in the court file, the signature of the foreman on the guilty verdict form which he handed to us on the day . . . the jury rendered their verdict." During the polling, the court verified that the signature on the verdict form was that of the jury foreman and that he signed it at the time the verdict was rendered. The court also questioned the excused juror regarding her involvement in the jury's deliberations:

> *Q.* [Juror 13], you went into the jury room. Did you participate?
>
> *A.* No
>
> *Q.* Did you speak?

*A.* I asked for water and coffee, and I made coffee.

*Q.* You asked for coffee and water. Did you participate at all in the deliberations?

*A.* No.

*Q.* All you did was listen quietly?

*A.* Um hum.

*Q.* Didn't vote, didn't talk, just sat and made coffee?

*A.* I made coffee, yes.

During this hearing, defendant renewed his motion for dismissal on the ground of double jeopardy. In denying defendant's motion for dismissal, the court stated:

> Again, in a discussion at the bench, we made a subsequent record indicating that there was, the shock of the moment of seeing 13 jurors which in my career I have never seen, and I've been a judge for 20 years.
>
> We did not complete the polling process. But, the foreman had in fact signed the Jury Verdict form and handed it to my clerk. [T]he foreman did in fact render the verdict of the jury.
>
> And we have now completed or will complete the polling process . . . . And the 13th juror who did make a record today indicated that she did not take part in any discussion. So that there was no mistrial.
>
> And the court speaks through its written orders. There is no written Order of mistrial. Therefore, the verdict would in fact be reinstated, and any record would of course then go up to the Court of Appeals. So, the question of jeopardy is not before this court because I don't believe that we have a mistrial.
>
> There was no written Order of mistrial. And the verdict will be reinstated based upon the fact that all of this was done prior to that. The cases, I believe that [defense counsel] cite[s] . . . refer to mistrial during that [sic] occurred during the proceedings and not after a jury has rendered their verdict.

> And second of all, I believe that the acquiescence would
> in fact [sic] that was sort of a joint decision at the bench off
> the top of our heads which has been recalled prior to the
> entry of a formal Judgment. And therefore since there was
> no written Judgment of mistrial, this court is free to rein-
> state and we are taking our poll. And there is a verdict of
> guilty. So the question of jeopardy is irrelevant at this time.

After completing the polling, the court accepted the verdict and noted that the jury found defendant guilty on all four counts.

II

Defendant asserts several errors that he claims warrant reversal of his convictions; however, the key question appears to be whether the trial court abused its discretion by first declaring a mistrial and then revoking the declaration of a mistrial and reinstating the jury's verdict. To facilitate our review of this alleged erroneous sequence of events, we analyze individually the trial court's four primary decisions in this regard: (a) the declaration of a mistrial sua sponte, (b) the revocation of the declaration of the mistrial, (c) the recalling and repolling of the jurors, and (d) the reinstatement of the verdict.

A

We first address whether the trial court erred in declaring a mistrial. A trial court should refrain from declaring a mistrial unless " 'a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a con-tinuation of the proceedings.' " *People v Hicks*, 447 Mich 819, 829; 528 NW2d 136 (1994), quoting *United*

*States v Jorn,* 400 US 470, 485; 91 S Ct 547; 27 L Ed 2d 543 (1971). Therefore, we review the trial court's determination on this issue for an abuse of discretion. *People v Blackburn,* 94 Mich App 711, 714; 290 NW2d 61 (1980).

It appears that the trial court in this case concluded that defendant consented to, or at least acquiesced in, the court's declaration of a mistrial. This conclusion apparently was based on defense counsel's response to the court's inquiry regarding what was said during the bench conference that followed the discovery of the thirteenth juror. According to defense counsel's recollection of the discussion, which was confirmed by the prosecutor, he neither objected to nor agreed with the court's conclusion that a mistrial was warranted. Contrary to the trial court's conclusion, a criminal defendant's silence in the face of the court's declaration of a mistrial cannot be construed as consent. *People v Johnson,* 396 Mich 424, 432-433; 240 NW2d 729 (1976), repudiated on other grounds in *People v New,* 427 Mich 482, 488-490; 398 NW2d 358 (1986). Here, there was no evidence on the record that defendant or his counsel explicitly indicated consent to the mistrial, and we will not presume consent in the absence of an affirmative showing. *Johnson, supra* at 433.

Because defendant did not consent to the declaration of a mistrial, the court's decision to declare a mistrial may be justified only by a finding of manifest necessity. Manifest necessity may be found where there are sufficiently compelling circumstances that would deprive the defendant of a fair trial or make its completion impossible. *People v Echavarria,* 233 Mich App 356, 363; 592 NW2d 737 (1999). Whether

manifest necessity exists depends on the facts of each particular case and requires the trial court to balance the justification for the mistrial against the defendant's interest in completing the trial in a single proceeding before a particular tribunal. *Hicks, supra* at 829. Before declaring a mistrial, a trial court should conduct a hearing on the record and make explicit findings that no reasonable alternative exists. *People v Little,* 180 Mich App 19, 29; 446 NW2d 566 (1989); *Hicks, supra* at 841. "Any doubts concerning the existence of manifest necessity should be resolved in favor of the defendant." *Id.* at 830.

In this case, it is apparent that at the time the court learned of the thirteenth juror, no manifest necessity existed that would require the trial court to declare a mistrial. The mere presence of the alternate juror during deliberations was not, in and of itself, a compelling circumstance that would deprive the defendant of a fair trial. *United States v Olano,* 507 US 725, 737; 113 S Ct 1770; 123 L Ed 2d 508 (1993). Had the verdict been rendered by thirteen jurors, it is possible that the trial court would have been able to find manifest necessity justifying a mistrial. See *People v Sizemore,* 69 Mich App 672, 679; 245 NW2d 159 (1976). However, the court failed to conduct a hearing to determine whether the alternate juror participated in the deliberations, or to even enter findings on the record that no reasonable alternative existed and the circumstances warranted the declaration of a mistrial. Further, it is evident from the alternate juror's subsequent account of her role, or lack thereof, in the jury deliberations that a hearing would not have indicated the presence of manifest necessity.

Because the discovery of a thirteenth juror without a specific showing of prejudice to defendant did not constitute manifest necessity sufficient to justify a mistrial, the court's initial decision to declare a mistrial was an abuse of discretion.

B

Although the trial court abused its discretion in declaring a mistrial, the court attempted to correct this apparent error by reconsidering the matter and reversing its decision on the following day. However, this raises the question whether the trial court was acting within its discretion and authority when it revoked the declaration of a mistrial. Apparently, this is an issue of first impression for this Court. As stated previously, the authority to declare a mistrial is within the trial court's discretion. *Blackburn, supra* at 714. Presumably, the revocation of a declaration of a mistrial would also be a discretionary decision; however, there is no authority confirming this conclusion. We find that the court rules provide guidance on this issue. Regarding substantive mistakes in criminal cases, a trial court may "reconsider and modify, correct, or rescind any order it concludes was erroneous" provided that it has not yet entered a judgment. MCR 6.435(B); *People v Jones*, 203 Mich App 74, 80; 512 NW2d 26 (1993). Pursuant to the permissive language of this court rule, we conclude that a trial court's decision to reverse its previous declaration of a mistrial should be reviewed for an abuse of discretion.

Here, we find no abuse of discretion in the court's determination that the mistrial was erroneously declared and its subsequent revocation of the mistrial

because the decision was neither "so grossly violative of fact and logic that it evidence[d] perversity of will, defiance of judgment, [or] the exercise of passion or bias," nor was the decision without justification. *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996). As we stated above, the initial decision to declare a mistrial was error. Therefore, the trial court properly exercised its discretion to correct this error when it vacated its declaration of a mistrial. Further, because no judgment had been entered in the case, the trial court was within its discretion to rescind the erroneous ruling. MCR 6.435(B).

We note that we have held that the declaration of a mistrial renders nugatory all trial proceedings with the same result as if there had been no trial. *Hamm, supra* at 435. This holding would seem to dictate that once the trial court declared a mistrial, the court no longer had jurisdiction to vacate the order declaring a mistrial. However, the issue in *Hamm* was whether the defendant's waiver of a jury trial in the first proceeding where the court declared a mistrial would operate to prevent the defendant from demanding a jury in the retrial. *Id.* at 433. In essence, in *Hamm* we were considering the effect of the declaration of a mistrial on the proceedings that occurred *before* the declaration of a mistrial, whereas in this case, we are considering whether the declaration of a mistrial precludes the trial court from *subsequently* reconsidering and vacating that decision. Clearly, the holding in *Hamm* does not contradict our conclusion that the trial court was authorized by MCR 6.435(B) to revisit its decision to declare a mistrial.

Although Michigan courts have yet to determine whether a trial court can revoke a declaration of a

mistrial, other jurisdictions have addressed this issue, holding that after the declaration of a mistrial a trial court retains the authority to withdraw or rescind the order declaring the mistrial and to correct or modify its orders. See *Rodriguez v State*, 852 SW2d 516, 519-520 (Tex Crim App, 1993); *People v Dawkins*, 82 NY2d 226, 230-231; 624 NE2d 162 (1993). We find these cases persuasive and supportive of our determination that the revocation of the mistrial in this case was justified. Therefore, we conclude that the trial court was not prevented from correcting an erroneous declaration of a mistrial, and, in fact, was well within its discretion to do so.

C

The trial court was acting within its discretion in revoking its declaration of a mistrial; however, we do not agree that the court had the authority to recall the jury and continue the polling. Once a jury is discharged, it is error to recall it in order to alter, amend, or impeach a verdict in a criminal case. *People v Rushin*, 37 Mich App 391, 398; 194 NW2d 718 (1971). In *Rushin*, we explained the policy reasons that prevent a trial court from recalling discharged jurors:

> As soon as it departs from the courtroom, the jury's legal duties cease to exist; it no longer functions as a unit charged to perform a solemn task but rather as 12 unsworn members of the community; its relationship to the case has terminated. The Court cannot ascertain the influence to which the jury has been subjected after it has left the courtroom, be it for two minutes or two days. Thus, the jurors are proscribed from deliberating further in the case.

> To rule that a jury could be recalled after being dis-
> charged and leaving the courtroom would not only offend
> the policies underlying the double jeopardy clause, but
> would also serve as an invitation to tamper with the jury
> after it had completed its deliberations. [*Id.* at 398-399.]

Here, the court discharged the jury immediately after declaring the mistrial and before the polling was completed. Once it dismissed the jury, the court was without discretion or authority to recall the jury to complete the polling process. Although the argument could be made in this case that the court was not attempting to alter, amend, or impeach the verdict, any one of those results was certainly possible in this case because the polling had not been completed and the jurors were free to recant the verdict during the polling. See *Wayne Co Prosecuting Attorney v Detroit Recorder's Court Judge*, 64 Mich App 408, 410; 235 NW2d 799 (1975); *People v Fleish*, 306 Mich 8, 14; 9 NW2d 905 (1943). It is apparent that the dismissal of the jury, even after the verdict has been announced by the foreperson, serves to extinguish the jury's sworn duty in the case and precludes the court from revisiting the jury's verdict. We conclude that, as a matter of law and public policy, the trial court erred in recalling the jurors to complete the polling process.

D

Finally, we consider whether the trial court erred in "reinstating" the jury's verdict. After careful consideration of the facts of this case and the controlling law, we conclude that this decision was also in error because there was no valid verdict to reinstate.

MCR 6.420 establishes the procedure for acceptance of verdicts in criminal cases. The rule first

requires that the jury return the verdict in open court. MCR 6.420(A). It appears that occurred here when the foreman stated the jury's verdict on the record. However, before the jury is discharged, the court is also required to poll the jury if a party requests the polling. MCR 6.420(C). In this case, the defendant requested that the jury be polled, thereby obligating the court to poll the jurors before discharging them. A verdict is not final until it is announced in open court, assented to by the jury, and accepted by the trial court. 75b Am Jur 2d, Trial, § 1761. See also *People v Sanders*, 58 Mich App 512, 516-517; 228 NW2d 439 (1975).

Because the trial court in this case did not complete the polling process, the verdict was not assented to by the jury, the court did not comply with the proper verdict procedure, and the verdict cannot be considered final. As we stated in *People v McNary*, 43 Mich App 134; 203 NW2d 919 (1972), rev'd in part on other grounds 388 Mich 799 (1972):

> A jury verdict is not merely the first sentence uttered by the foreman when asked for the verdict. Often the verdict will have to be clarified and interpreted by either the judge or the jury until it specifically identifies a known crime. The judge has a right to clarify the form of the verdict if the jury has not been discharged; and the jury can always change the form and the substance of the verdict to coincide with its intention, before it is discharged. [*Id.* at 142-143.]

Here, it is apparent that the verdict was not final at the time that the trial court declared the mistrial and discharged the jury. Therefore, there was no valid, final verdict that could be reinstated by the trial court. Further, as we concluded above, the court did not have the authority to recall the jury and complete

the polling process. Even though the jurors did assent to the verdict during the court's subsequent polling of the recalled jury, we cannot reach the conclusion that this erroneous polling somehow operated to finalize or validate the verdict. Therefore, the court erred in attempting to reinstate the verdict announced by the jury foreperson.

In summation, we conclude that the trial court (a) abused its discretion in declaring a mistrial because defendant did not consent to the mistrial and the mere presence of the alternate juror during the deliberations did not constitute manifest necessity, (b) did not abuse its discretion in reconsidering and vacating its decision to declare a mistrial because the decision was in error and the court had the discretion to reconsider its decisions before entry of a judgment, (c) erred as a matter of law in deciding to recall the jurors and poll them because the jury could not be recalled after it was discharged, and (d) erred as a matter of law in determining that it could reinstate the jury verdict because there was no valid, final verdict to reinstate. On the basis of these conclusions, we are compelled to reverse defendant's convictions.

III

Because we have determined that the trial court erred in recalling the jury and reinstating the jury verdict and are reversing the convictions on these grounds, we must now determine whether defendant can be retried in this case without offending the constitutional prohibition against double jeopardy. It is well established that the state may not twice place a person in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15. Because jeopardy at-

taches at the time the jury is sworn, the discharge of a jury before reaching a verdict without the defendant's consent or legal justification operates as a dismissal of the charges. *People v Dry Land Marina, Inc,* 175 Mich App 322, 325; 437 NW2d 391 (1989). "If the trial is concluded prematurely, a retrial for that offense is prohibited unless the defendant consented to the interruption or a mistrial was declared because of manifest necessity." *People v Mehall,* 454 Mich 1, 4; 557 NW2d 110 (1997). It is clear in this case that defendant did not consent to the declaration of a mistrial, and, therefore, a retrial is possible only if manifest necessity justified the premature conclusion of the trial.

The concept of manifest necessity is not precisely defined, and whether manifest necessity exists depends in large part on the facts of a particular case. *Echavarria, supra* at 363. However, in general terms, manifest necessity can be found where (1) compelling circumstances would deprive the defendant of a fair trial or make completion of the trial impossible, (2) an impartial verdict cannot be reached, or (3) a conviction would be reversed on appeal because of an obvious procedural error. *Id.*

We already concluded that the fact that the alternate juror was allowed to enter the jury room during deliberations did not constitute manifest necessity, and that the trial court's initial declaration of a mistrial was error. However, manifest necessity justifying a retrial can also exist where a conviction would be reversed on appeal because of " 'an obvious procedural error in the trial.' " *Id.* at 363, quoting *Illinois v Somerville,* 410 US 458, 464; 93 S Ct 1066; 35 L Ed 2d 425 (1973). In this case, it is apparent that we have

two obvious procedural errors mandating reversal:
the repolling of a discharged jury and the reinstate-
ment of an invalid verdict. Although the trial court
correctly concluded that the presence of the thir-
teenth juror was not manifest necessity, the court's
subsequent attempts to correct its erroneous declara-
tion of a mistrial did amount to manifest necessity
that would allow the retrial of this case.

Our decision in *Wayne Co Prosecuting Attorney,*
*supra,* provides guidance on this issue. In that case,
the prosecuting attorney sought a writ of superintend-
ing control in this Court, requesting that we vacate a
Recorder's Court judgment and order the trial court
to declare a mistrial. In the underlying criminal case,
the trial court polled the jury following the announce-
ment of a verdict of not guilty by reason of insanity
and learned that one juror did not agree with the ver-
dict. After the court further determined that the juror
in question had voted for the verdict of not guilty by
reason of insanity, it accepted the verdict over the
prosecutor's objection and excused the jury. We deter-
mined that the trial court's decision to accept a
clearly nonunanimous verdict was error and that the
court should have either instructed the jury to delib-
erate further or determined that the jury was unable
to reach a verdict. *Id.* at 410. We then sua sponte
declared a mistrial under the authority of GCR 1963,
820.1(7)[3] and reversed and remanded the case to the
trial court for a retrial. *Id.*

---

[3] GCR 1963, 820.1(7), a predecessor of our current court rule, MCR
7.216, allowed this Court the discretion to "[g]ive any judgment and make
any order which ought to have been given or made, and make such other
and further orders and grant such relief, as the case may require . . . ."
*Wayne Co Prosecuting Attorney, supra* at 410.

This Court reached a similar result in *People v Booker (After Remand)*, 208 Mich App 163; 527 NW2d 42 (1994), where we held that a trial court's acceptance of a guilty verdict after two jurors expressed doubt about the verdict during jury polling was error. *Id.* at 169. In reliance on *Wayne Co Prosecuting Attorney, supra,* we declared a mistrial and reversed in part and remanded for a new trial. *Id.* at 174.

Although the facts of *Wayne Co Prosecuting Attorney* and *Booker* are not analogous to the facts of the present case, our holdings in those two cases indicate the proper resolution of this matter. It is clear that this Court has the discretion to declare a mistrial and reverse and remand for a retrial where the record indicates the existence of manifest necessity. MCR 7.216(A)(7);[4] *Wayne Co Prosecuting Attorney, supra* at 410; *Booker, supra* at 174. Here, manifest necessity justifying a retrial occurred when the trial court repolled the jury and reinstated the verdict, thereby creating procedural errors subject to reversal. In exercising our discretion pursuant to the court rules, we sua sponte declare a mistrial and reverse and remand for a new trial.

---

[4] MCR 7.216(A) states, in pertinent part:

(A) Relief Obtainable. The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just:

\*     \*     \*

(7) enter any judgment or order or grant further or different relief as the case may require.

IV

Because we conclude that defendant's convictions should be reversed and the case should be remanded for a retrial, we need not address defendant's other assertions of error regarding the conduct and outcome of the first trial.[5] However, because our declaration of a mistrial has the affect of voiding all rulings and orders issued by the trial court, *Hamm, supra* at 435, we will address two remaining allegations that are subject to repetition in the second trial.

First, defendant argues that the trial court erred in finding that defendant was not entrapped. We disagree. Whether entrapment occurred must be determined by considering the facts of each case and is a question of law for the court to decide. *People v Patrick*, 178 Mich App 152, 154; 443 NW2d 499 (1989). The trial court must make specific findings regarding entrapment, and we review its findings under the clearly erroneous standard. *People v Juillet*, 439 Mich 34, 61; 475 NW2d 786 (1991); *People v Connolly*, 232 Mich App 425, 428; 591 NW2d 340 (1998). The findings are clearly erroneous if this Court is left with a firm conviction that a mistake was made. *Id.* at 429.

Michigan courts apply the objective test of entrapment by focusing on the propriety of the government's conduct that resulted in the charges against the defendant rather than on the defendant's predisposition to commit the crime. *Juillet, supra* at 53; *People v Hampton*, 237 Mich App 143, 156; 603 NW2d 270 (1999). Entrapment occurs when (1) the police

---

[5] Defendant alleged that during the first trial (1) he was denied effective assistance of counsel, (2) the prosecutor engaged in misconduct, and (3) the trial court erred in sentencing him.

engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that it cannot be tolerated by the court. *People v Ealy*, 222 Mich App 508, 510; 564 NW2d 168 (1997). Entrapment will not be found where the police did nothing more than present the defendant with the opportunity to commit the crime of which he was convicted. *Id.*

Here, defendant claims that the police engaged in "entrapment by escalation" by purchasing increasing amounts of cocaine from him in order to obtain a conviction for the greater offense of delivery of fifty or more but less than 225 grams of cocaine. Contrary to defendant's argument, the escalation in the amount of cocaine purchased did not constitute entrapment in this case. As the trial court properly observed, the conduct of the undercover officer was not reprehensible and did not induce defendant to sell drugs. Rather, as the officer testified, larger amounts of cocaine were purchased from defendant in order to identify his source. Further, the undercover officer did not engage in unlawful or criminal behavior, but merely afforded defendant an opportunity to sell drugs to him. *Id.* at 510. We find no error in the trial court's conclusion that defendant was not entrapped into committing a greater offense subject to more severe punishment.

Defendant also argues that the police engaged in misconduct that denied him due process. Because this issue was not raised in the trial court, defendant is not entitled to relief unless he can show plain error that affected his substantial rights. *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999).

We first reject defendant's argument that he was denied a fair trial because of the police officer's insistence that defendant purchase larger quantities of cocaine to sell to the officer. Because we concluded that the trial court properly found that the police conduct in this case did not amount to entrapment, defendant's argument fails. *Ealy, supra* at 510.

Defendant also claims that he was denied due process because the police delayed arresting him. This argument is without merit. As we set forth in *People v Anderson*, 88 Mich App 513, 515; 276 NW2d 924 (1979),

> [m]ere delay between the time of the commission of an offense and arrest is not a denial of due process. There is no constitutional right to be arrested. Rather, the guideline is whether the record presents evidence of prejudice resulting from the delay which violates a defendant's right to procedural due process. . . .
>
> . . . If the prosecutor is able to explain the delay, show that it was not done deliberately to prejudice the defendant, and establish that no undue prejudice resulted from the delay, then a conviction may still be upheld. [Citations omitted.]

In *Anderson*, we found that no undue prejudice resulted from the delay in arresting the defendant where "[t]he prosecution justified the delay on the ground that an earlier arrest would have impaired the undercover agent's ability to conduct an ongoing narcotics investigation" and "[t]here was no showing that the delay was deliberate." *Id.* at 516.

Likewise, no undue prejudice resulted from the delay in arresting defendant in the instant case. Although the undercover officer testified that defendant had outstanding warrants that could have been

executed before March 30, 1998, and he knew where to find defendant, he believed that "the easiest way to make an arrest without getting into any problems is to have him come to you." The officer further testified that he arranged the March 30, 1998, transaction because he wanted to gain information about defendant's supplier. Considering that the delay was not done deliberately to prejudice defendant, but to obtain information about his supplier and to facilitate his arrest at the same time, defendant failed to demonstrate a plain error affecting his substantial rights. *Carines, supra.*

Finally, we disagree with defendant's assertion that he was denied a fair trial when the trial court admitted evidence of the cocaine purchased from defendant. Defendant claims that the undercover officer committed misconduct by allegedly breaking the chain of custody when he waited four months before turning the cocaine over to the state police lab. We find no error in the admission of the drug evidence because defendant's argument is relevant only to the weight of the evidence, not its admissibility. *People v Kremko*, 52 Mich App 565, 573; 218 NW2d 112 (1974).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.