# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MELVIN EARL HOWARD,

        Defendant-Appellant.

UNPUBLISHED
March 8, 2016

No. 324388
Washtenaw Circuit Court
LC No. 13-001442-FH

Before: SERVITTO, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of third-degree criminal sexual conduct (CSC III), MCL 750.520d (multiple variables), and sentenced to a term of 5 to 15 years' imprisonment, with credit for 21 days served. Defendant appeals as of right. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The charges in the instant case arose following an incident that occurred on July 6, 2013, in Ypsilanti, Michigan. The victim alleged that during a party at an apartment, defendant engaged in sexual intercourse with her without her consent while she was heavily intoxicated with alcohol and marijuana. Defendant asserted that the sex was consensual.

## A. THE FIRST TRIAL

On March 24, 2014, defendant's first trial began. After voir dire, the jury was sworn in and given preliminary instructions, and the parties gave opening statements. The jury then heard testimony from the victim and her friend who hosted the party. The victim's friend testified that she did not have a cell phone on the night of the incident and that someone other than herself or the victim purchased New Amsterdam vodka at Campus Corner. During her testimony, the victim's friend was belligerent and argumentative with the attorneys. At one point, the judge excused the jury so he could have an off-the-record discussion with the attorneys in his chambers. When he came back on the record, the judge expressed his displeasure with the witness's conduct and informed her that she would be held in contempt if she continued to argue with the attorneys and give evasive answers. After defense counsel cross-examined the witness, the judge questioned the witness about who purchased the alcohol and she repeatedly answered that she did not know. The judge then excused the jury and held a short off-the-record bench conference. Back on the record, the prosecutor stated the following concerning what the attorneys and judge had discussed in chambers and at the bench conference:

-1-

A short while ago, we broke because the Court had some concerns about the answers [the witness] was giving. When we went back in chambers, we discussed that it was the Court's opinion that [the witness] was giving some answers that were not truthful. I stated to the Court that they didn't sound very good to me either. I was concerned about some of the answers that she was giving. However, what I could not say was that she was not testifying specifically on the stand in a manner that was different from what she had told me before. Therefore, I was not bringing it to the Court's attention that I believed that she was committing perjury or misleading the Court in any way. Was I concerned, and did I, quite frankly, have problems with the veracity of some of the answers that she was giving, yes, and I made that clear to the Court. However, I didn't feel, at that point, that I had specific information that she was committing perjury. And so we asked if we could reconvene. We spoke with her. We said knock it off, answer the questions, just be truthful . . . . And I think when she came back out here her demeanor was much more appropriate. There were some questions that were asked, both by [defense counsel] as well as the Court, and there were a couple of answers that were given with the last few minutes which concerned me. One of them was that [the witness] testified that somebody bought the alcohol at Campus Corner. . . . I am aware, through Officer Compton, who has been [a Ypsilanti] cop for over nine years, and . . . knows that city like the back of his hand, Campus Corner doesn't sell liquor. They sell beer. They don't [sell] liquor. Now, it's one thing if that isn't just an honest mistake, but I think, and I don't [want to] speak for the Court, but it did appear as if she was definitively answering that there was liquor that was bought at that store because she talked about they were drinking New Amsterdam . . . so that was one issue that I wanted to bring to the Court's attention as an officer of the court.

The other thing that I wanted to bring to the Court's attention, as an officer of the court, is [the witness] testified that she didn't have a phone. In fact, she went over that on multiple occasions. She also testified that she didn't have a cell phone, she didn't have a house phone, and that she communicated through the [internet] or something like that. We are, and this is the other thing that I needed to bring to the attention of the Court, we are in possession of—well, for one thing, in the informational section of the police report under [the witness's name], there is a phone number. Another bit of information that ties in with that, though, is we are in possession of some phone records which we use to look at a different aspect of this case which I raised with the Court before the trial even started, and there are some notations on there which were, quite frankly, written on there by [the victim] where she wrote down that that was [the witness's] number, and she wrote that down [on] a few occasions. We didn't track the whole week or two weeks or whatever it was, but we tracked [the] day or the hours surrounding this event. Now, the number that's on there, quite frankly, is one digit off, but it's a digit in the middle of the number, and it certainly makes me comfortable to say that we're talking about the same numbers.

I want to bring that to the Court's attention because I think the Court needs to know that. Now, I will say this: Whatever the Court does, whatever action the

-2-

Court takes, obviously, we will respect, and I understand that the Court has concerns as do I. I guess my only question is whether or not this impacts on the complaining witness's testimony. That would be the only thing that I would ask the Court to consider before you make the ruling.

Now, I understand that the jury has been given information, but the only thing that I would ask the Court to consider is . . . whether this problematic testimony necessarily impacts the testimony from [the victim].

After the prosecutor's statement, the trial court declared a mistrial, stating the following:

My concern, frankly, is having this issue, which is an important issue, go to the jury with the status of this testimony . . . and this witness. Frankly, I—let me back up. I thank you, [prosecutor] for bringing it to the Court's attention. You are an ethical attorney, and you always have been in this court, and I respect that. Nothing that happened here is—not only is not the fault of the Prosecutor or the police, but—they have both been forthcoming with the Court. My concern is that the status of this testimony taints this jury to the degree that I don't think it's fair either to [defendant] or, frankly, to [the victim's] complaint to allow this matter to go to the jury on this basis.

I'm going to declare a mistrial in this matter.

## B. THE SECOND TRIAL

Defendant was retried on June 30 and July 1, 2014. The problematic witness did not testify at the second trial. The victim testified that defendant engaged in sexual intercourse with her without her consent while she was heavily intoxicated. Defendant argued that the sex was consensual and that the victim was lying because she had a boyfriend at the time of the incident. The jury found defendant guilty as charged of CSC III.

## II. DOUBLE JEOPARDY

On appeal, defendant argues that his conviction at the second trial violated his double jeopardy rights because the trial court sua sponte declared a mistrial during the first trial when there was no manifest necessity and without defendant's or his counsel's consent. We disagree.

## A. STANDARD OF REVIEW

Generally, a double jeopardy challenge presents a question of constitutional law that this Court reviews de novo. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008). Although defense counsel mentioned double jeopardy at sentencing, the trial court did not address or rule on the issue, instead instructing defendant to file a written motion. No such motion was filed. Accordingly, this issue is unpreserved. See *People v Eccles*, 260 Mich App 379, 385; 677 NW2d 76 (2004). This Court set forth the applicable standard of review in *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005) (citations and quotation marks omitted):

This Court reviews unpreserved claims that a defendant's double jeopardy rights have been violated for plain error. To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Reversal is appropriate only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

The decision of a trial court to declare a mistrial after a finding of manifest necessity is reviewed for an abuse of discretion. *People v Ackah-Essien*, 311 Mich App 13, 31; ___ NW2d ___ (2015). "The issue is not whether this Court would have found manifest necessity, but whether the trial court *abused its discretion* in finding manifest necessity." *People v Lett*, 466 Mich 206, 220; 644 NW2d 743 (2002).

## B. DISCUSSION

The protection of an accused against being twice put in jeopardy for the same offense is a right guaranteed by both the United States and Michigan Constitutions. US Const, Am V; Const 1963, art 1, § 15. "The purpose of the double jeopardy prohibition is to limit the state to having generally only one attempt at obtaining a conviction." *People v Dawson*, 431 Mich 234, 250; 427 NW2d 886 (1988). "Otherwise, the state could repeatedly prosecute persons for the same crime, transforming the trial process itself into a punishment and effectively punishing the accused without his having been adjudged guilty of an offense meriting punishment." *Id*. at 250-251. "Further, because the state can devote its resources to improving the presentation of its case, the probability of a conviction may increase with each retrial." *Id*. at 251.

Jeopardy attaches in a criminal proceeding when the jury is impaneled and sworn. *Dawson*, 431 Mich at 251. The United States Supreme Court has explained the reason that a defendant is put in jeopardy before the trial ends with a verdict as follows:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [*Green v United States*, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957).]

In accordance with these principles, when a mistrial is declared, the Double Jeopardy Clause may bar a retrial. *Dawson*, 431 Mich at 251. However, the right against double jeopardy does not bar all retrials. *Id*. at 252. For example, if

> the motion for mistrial was made by defense counsel, or with his consent, and the mistrial was caused by innocent conduct of the prosecutor or judge, or by factors beyond their control, or by defense counsel himself, retrial is also generally

-4-

allowed, on the premise that by making or consenting to the motion the defendant waives a double jeopardy claim. [*Id*. at 253.]

On the other hand, if a motion for a mistrial is made by the prosecutor or a trial judge sua sponte without defense counsel's consent, retrial is generally only allowed if declaration of the mistrial was "manifestly necessary." *Id*. at 252. "The constitutional concept of manifest necessity does not require that a mistrial be '*necessary*' in the strictest sense of the word. Rather, what is required is a 'high degree' of necessity." *Lett*, 466 Mich at 218.

In some cases, a defendant's consent to a trial court's declaration of a mistrial can be inferred despite the lack of express objection or agreement. In *People v McGee*, 247 Mich App 325, 333; 636 NW2d 531 (2001), rev'd 469 Mich 956 (2003), this Court held that a defendant did not consent to the trial court's declaration of a mistrial when his counsel neither objected nor agreed because "a criminal defendant's silence in the face of the court's declaration of a mistrial cannot be construed as consent." The Court explained that "there was no evidence on the record that defendant or his counsel explicitly indicated consent to the mistrial[.]" *Id*. However, in reversing this Court's decision, our Supreme Court held that because the record "reveal[ed] circumstances from which consent to the circuit court's declaration of a mistrial c[ould] be inferred," retrial was not barred by the constitutional protection against double jeopardy. *People v McGee*, 469 Mich 956, 956; 670 NW2d 665 (2003).[1]

Likewise, the United States Court of Appeals for the Sixth Circuit has held that a defendant's consent to a mistrial can be implied if the totality of the circumstances "positively indicates [that] silence was tantamount to consent." *United States v Gantley*, 172 F3d 422, 429 (CA 6, 1999). In *Gantley*, the Sixth Circuit concluded that a retrial was not barred by the constitutional right against double jeopardy when the trial court and attorneys discussed the possibility of a mistrial, and the court "invited an objection by asking counsel if there was 'anything else' to address." *Id*.[2]

In this case, the circumstances surrounding the trial court's declaration of a mistrial permit us to conclude that defendant impliedly consented to the mistrial, even if the consent was in the form of silence. The record reveals that the trial court held two off-the-record discussions with the attorneys, one in chambers and one at a bench conference, during which the court

---

[1] See also *Lett*, 466 Mich at 222 n 15 (noting, without deciding, that there is support for finding implied consent to the discharge of a jury in cases where a defendant forfeits objection, rendering it unnecessary to decide whether the declaration of a mistrial was supported by manifest necessity).

[2] Several other circuit courts have held that a defendant "impliedly consents to a mistrial if the defendant had an opportunity to object to the mistrial but fails to do so." *United States v Ham*, 58 F3d 78, 83 (CA 4, 1995), citing *United States v DiPietro*, 936 F2d 6, 9-10 (CA 1, 1991); *Camden v Circuit Court of Second Judicial Circuit*, 892 F2d 610, 614-618 (CA 7, 1989); *United States v Puleo*, 817 F2d 702, 705 (CA 11, 1987); *United States v Smith*, 621 F2d 350, 352 (CA 9, 1980); *United States v Goldstein*, 479 F2d 1061, 1067 (CA 2, 1973).

expressed concerns regarding the witness's demeanor, the veracity of her testimony, and its impact on the trial. Immediately after the bench conference, the trial court dismissed the jury and asked the prosecutor to summarize the discussions that took place in chambers and at the bench conference. The prosecutor indicated that as a result of the discussions, he expected the trial court to take action, stating, "Whatever the Court does, whatever action the Court takes, obviously, we will respect, and I understand that the Court has concerns as do I." Thereafter, the trial court declared a mistrial.

Considering the above circumstances, defense counsel was aware of the trial court's concerns and the possibility that the trial court might declare a mistrial. Yet, there is no evidence that defendant or his counsel expressed any disapproval of or opposition to a mistrial declaration, despite having had the opportunity to do so during either of the off-the-record discussions, the prosecutor's summary of the discussions, or the trial court's remarks surrounding its declaration of a mistrial. In this context, we believe that defendant's consent to the declaration of a mistrial can be inferred, and retrial was not barred by the constitutional right against double jeopardy.[3]

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, defendant contends that his trial counsel was constitutionally ineffective for failing to file a motion to dismiss before the second trial. Defendant did not challenge the effectiveness of his trial counsel below, so this issue is unpreserved. *People v Armisted*, 295 Mich App 32, 45-46; 811 NW2d 47 (2011). "We review unpreserved claims, both constitutional and nonconstitutional, for outcome-determinative plain error." *Id*. at 46. Our review of unpreserved ineffective assistance claims is limited to errors apparent on the record. *Id*.

The right to the effective assistance of counsel is guaranteed by both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. Effective assistance of counsel is presumed, and a defendant bears the burden of overcoming a strong presumption that counsel's conduct constituted sound trial strategy. *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). To prevail on an ineffective assistance claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for the error, there is a reasonable probability that the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Defendant argues that his trial counsel was ineffective for failing to file a motion to dismiss before the second trial after the trial court improperly declared a mistrial in the first trial. However, as discussed above, defendant impliedly consented to the trial court's declaration of a mistrial, so the mistrial declaration was not improper and retrial did not violate defendant's constitutional right against double jeopardy. Defendant does not challenge his trial counsel's decision not to object to the trial court's declaration of mistrial in the first trial, but rather challenges only his counsel's failure "to move the trial court to dismiss his reprosecution after the improper declaration of a mistrial in the first trial." Any motion by defense counsel to

---

[3] In light of our conclusion that defendant impliedly consented to the declaration of a mistrial, we need not address whether declaration of a mistrial was manifestly necessary.

dismiss defendant's second trial on double jeopardy grounds would have been meritless in light of defendant's implied consent to the mistrial declaration. Defense counsel cannot be deemed ineffective for failing to raise a meritless objection. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Accordingly, defendant has not shown that his trial counsel provided ineffective assistance in this regard.

## IV. EVIDENTIARY ISSUES

Finally, defendant argues that his due process and fair trial rights were violated when the prosecutor introduced extensive testimony from the victim and law enforcement officers regarding defendant's identity and his previous law enforcement contacts. Specifically, defendant contends that the trial court improperly allowed the victim to testify about how she identified defendant from law enforcement photos of his tattoo because identity was not at issue and the testimony confused the jury, and because the testimony suggested that defendant had prior law enforcement contacts. Likewise, defendant argues that the trial court improperly allowed a police officer to testify that he identified defendant using a system that had photographs of anyone who had previously been arrested. Defendant did not object below, so our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that an error affected substantial rights, a defendant must demonstrate that "the error affected the outcome of the lower court proceedings." *Id*. Further, reversal is only warranted if the plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

Although defendant is correct that testimony indicating that he had previously been arrested should not have been admitted, he cannot demonstrate that the challenged testimony affected his substantial rights. The testimony suggesting that defendant had previously been arrested was extremely fleeting, and the prosecutor presented substantial evidence from which the jury could reasonably infer defendant's guilt. For instance, the prosecutor presented testimony that defendant put his clothes on and fled the scene immediately after the victim became aware of the assault. See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995) (holding that evidence of flight is probative to indicate consciousness of guilt). Further, the victim reported the incident to the police shortly after it occurred, which contradicted defendant's theory that the victim was lying because she had a boyfriend who would have been mad at her for cheating. By bringing the incident to the attention of the police, the victim essentially assured that her boyfriend would become aware of the sex. Accordingly, defendant has not shown that introduction of the evidence affected the outcome of the lower court proceedings.

Defendant also argues that his trial counsel provided ineffective assistance by failing to object to the evidence or request a curative instruction. Again, effective assistance of counsel is presumed, and defendant bears the heavy burden of proving that his counsel's actions did not constitute sound trial strategy. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). In this case, counsel could have soundly chosen not to object and request a limiting instruction to avoid bringing further attention to the fleeting inferences that defendant previously had been

arrested or had contact with law enforcement.[4]  Therefore, defendant has failed to demonstrate that his trial counsel provided ineffective assistance.

Affirmed.

/s/ Deborah A. Servitto
/s/ Michael F. Gadola

---

[4] See *People v Griffin*, 235 Mich App 27, 37; 597 NW2d 178 (1999) ("[B]ecause a special instruction concerning defendant's having been incarcerated would necessarily have highlighted that fact, defense counsel may well have decided not to bring that double-edged sword into play as a matter of sound strategy."), overruled on other grounds by *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007).