# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 23, 2014

v

RICHARD STEVEN GUTIERREZ,

Defendant-Appellant.

No. 317593
Wayne Circuit Court
LC No. 13-001111-FH

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of third-degree criminal sexual conduct ("CSC III"), MCL 750.520d(1)(c) (victim was mentally incapable, mentally incapacitated, or physically helpless). He was sentenced to 1 to 15 years' imprisonment for his CSC III conviction. For the reasons set forth in this opinion, we affirm the conviction and sentence of defendant, but remand to the trial court for the sole purpose of correcting the presentence investigation report (PSIR).

## I.     BACKGROUND.

This appeal arises from defendant's conviction for CSC III from events that occurred on September 3, 2012. On that evening, the alleged victim in this case attended a party being thrown at the residence of defendant in Garden City, Michigan. The alleged victim testified that she arrived at the party with her boyfriend and over the course of the evening drank rum, beer, vodka and smoked marijuana. She then testified that at some point she fell asleep in a chair in the backyard of the residence. Testimony of other witnesses who were at the party confirmed that she was not "feeling well" around 2:00 a.m. They testified that the alleged victim was seen holding her stomach and resting her head in her legs, though they were not certain whether they ever saw her "passed out." At some point she was helped into the residence by her boyfriend, defendant's roommate, or perhaps even defendant. Her boyfriend testified that when he placed her on the couch she was fully clothed and immediately went back to sleep. He testified that he checked in on the victim and at times she mumbled incoherently, whereas other times there was no response. Approximately two hours after the victim's boyfriend left her on the couch, he went to sleep on a couch in the front of the home.

The alleged victim was awakened around 5:00 a.m., testifying that her pants were pulled down to her ankles and a man's penis was inside her vagina. She testified that she felt groggy,

-1-

tired and "buzzed," and did not say anything because she was trying to figure out where she was and exactly what was happening. Following the sexual act, the perpetrator came back into the room with a towel and she recognized the v-neck shirt as the same one worn by defendant earlier in the evening. After defendant left the room, she used her cell phone to call her boyfriend to wake him up. The boyfriend testified that she asked if he had sex with her, to which he responded, "no." She then told her boyfriend that defendant had raped her. Without informing anyone else what they were doing, they left the house and went to the Dearborn police station where they were told to go to the hospital. While at the hospital, she received antibiotics and Plan B medication.

Defendant testified on his own behalf and admitted to having sexual intercourse with the alleged victim. However, defendant testified that he did so at the bequest of the alleged victim and that the sexual acts were consensual. The trial court found defendant guilty of CSC III and sentenced him as stated above.

## II. PSIR.

On appeal, defendant argues that this Court should remand this matter to the trial court because the trial court failed to strike incorrect information from the PSIR. Relying on this Court's decision in *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009), the prosecutor agrees that remand is necessary to ensure that the PSIR contains accurate information. The parties' consensus is consistent with MCL 771.14, which states the following:

> At the time of sentencing, either party may challenge, on the record, the accuracy or relevancy of any information contained in the presentence investigation report. . . . If the court finds on the record that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the presentence investigation report shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections. [MCL 771.14(6).]

During the sentencing hearing, defendant objected to a statement in the PSIR indicating that he had a ninth grade education. The trial court agreed that the PSIR incorrectly stated that defendant had a ninth grade education even though defendant actually completed two years of college. However, even though the court acknowledged that the information was inaccurate and appeared to cross out "Ninth Grade" and write in "2 YR DEGREE" on the first page of the PSIR, there is no indication that the PSIR was otherwise amended to include the correct educational information. Thus, given the parties' agreement that the report was not properly amended, we remand this matter to the trial court for correction of the PSIR, and an amended report should be forwarded to the Department of Corrections.

## III. OFFENSE VARIABLE ("OV") 3

Next, defendant contends that the trial court erred by assessing 10 points for OV 3 because the victim never complained of physical injury or needed medical treatment. "The proper interpretation and application of the statutory sentencing guidelines is a question of law that this Court reviews de novo." *People v Armstrong*, 305 Mich App 230, 243; 851 NW2d 856

(2014). "This Court reviews the sentencing court's scoring of a sentencing guidelines variable for clear error," which is present if this Court is "definitely and firmly convinced that [the sentencing court] made a mistake" after reviewing the entire lower court record. *Id*. at 242. However, this Court reviews de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

The trial court is required to use the applicable guidelines when it imposes a sentence. MCR 6.425(D). When scoring the offense variables during sentencing, the trial court may consider all of the evidence in the record. *Armstrong*, 305 Mich App at 245. The trial court's determination of an offense variable must be supported by a preponderance of the evidence in the record. *Id*. Additionally, the proper interpretation of the guidelines is a matter of statutory interpretation, which involves "determin[ing] and giv[ing] effect to the Legislature's intent." *Id*. at 243. The statutory language should be enforced as it is written if the plain and ordinary meaning of the language is clear. *Id*.

The statutory basis of OV 3 is MCL 777.33, which provides that the variable is scored when there is "physical injury to a victim." MCL 777.33(1). Ten points shall be assessed if "[b]odily injury requiring medical treatment occurred to a victim"; five points shall be assessed if "[b]odily injury not requiring medical treatment occurred to a victim"; and zero points shall be assessed if "[n]o physical injury occurred to a victim." MCL 777.33(1)(d)-(f). However, the trial court should not assess five points for OV 3 "if bodily injury is an element of the sentencing offense." MCL 777.33(2)(d). This Court has interpreted "bodily injury" as "anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Accordingly, this Court concluded that an infection that was a consequence of a rape, *id*., and a pregnancy that resulted from a defendant's criminal sexual conduct, *People v Cathey*, 261 Mich App 506, 514; 681 NW2d 661 (2004), were bodily injuries. *Id*. The statute defines the meaning of "requiring medical treatment," stating that the phrase "refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

Defendant argues that the trial court improperly assessed OV 3 at 10 points because the victim never complained of physical injury, never needed or sought medical treatment, and was only referred to the hospital by the police to receive a rape kit and DNA testing, which was not medical treatment. The lower court record does not contain any evidence that the victim experienced pain or physical damage (such as sustaining bruises or scratches), contracted an STD, or became pregnant as a result of defendant's conduct. However, the record below indicates that the victim received antibiotics and Plan B, a medication used to prevent pregnancy, when she went to the First Step location after the incident. This was precisely the same type of treatment addressed by this Court in *McDonald*, 293 Mich App at 298, and *Cathey*, 261 Mich at 514. Hence, because the trial court record supports the conclusion that the victim received medical treatment, i.e., the provision of antibiotics, in order to address or prevent a bodily injury immediately after the incident occurred, and Plan B, a medication used to prevent pregnancy, 10 points were properly accessed. Accordingly, defendant is not entitled to relief on this issue.

IV.  SENTENCING DISCRETION.

Next, defendant argues that he is entitled to resentencing because the trial court failed to recognize its discretion, based on a mistake of law, that it could sentence defendant to jail instead of prison.  At sentencing, defense counsel responded in the following manner to the trial court's questions regarding whether prison time was mandatory for a CSC III conviction:

> *THE COURT*:  Is there a mandatory prison time on this?
>
> [*DEFENSE COUNSEL*]:  There is.
>
> [*PROSECUTOR*]:  Yes, your Honor.
>
> *THE COURT*:  Where is that?
>
> [*PROSECUTOR*]:  I'm sorry.
>
> *THE COURT*:  Where is that in the statute?
>
> [*PROSECUTOR*]:  You know what, your Honor . . . I don't have it, but . . . I know first and third are mandatory prison.
>
> [*DEFENSE COUNSEL*]:  It's man -- yeah.  That's correct.  I'm not gonna argue.  That is correct.
>
> *THE COURT*:  Mandatory any [sic] prison time.
>
> [*PROSECUTOR*]:  No.  Mandatory prison [sic] within the guidelines.
>
> [*DEFENSE COUNSEL*]:  Yes.
>
> *THE COURT*:  Within the guidelines, okay.

It is clear that defense counsel's statements on the record expressly approved the trial court's erroneous conclusion that prison time was mandatory for defendant's CSC III conviction.

While such a statement may constitute waiver of appellate review of this issue, *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999), quoting *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (internal quotation marks omitted), it is apparent that trial counsel's statement was an inaccurate statement of law, thus implicating that defendant was deprived of effective assistance of counsel.  However, rather than remand to the trial court on this issue, the record is sufficient for this Court to make a proper determination as to whether the trial court exercised its discretion when sentencing defendant.  We therefore consider the issue preserved.

"This Court reviews a trial court's sentencing decisions for an abuse of discretion." *People v Sexton*, 250 Mich App 211, 227; 646 NW2d 875 (2002).  On appeal, defendant argues that he is entitled to resentencing because the court made a mistake of law by failing to recognize that it had the discretion to sentence him to jail instead of prison based on the minimum range

recommended by the sentencing guidelines, such that prison was not mandatory for his CSC III conviction. Defendant cites *People v Mauch*, 23 Mich App 723; 179 NW2d 184 (1970), in support of his claim. In *Mauch*, this Court remanded the case for resentencing because the trial court failed to exercise its discretion in setting the maximum sentence for the defendant's third felony conviction based on its erroneous belief that the sentence enhancement established under MCL 769.11 was mandatory. *Mauch*, 23 Mich App at 730. Defendant also cites *People v Daniels*, 69 Mich App 345, 347-350; 244 NW2d 472 (1976), in which this Court held that resentencing was required due to the trial court's erroneous conclusion, based on its interpretation of Michigan law and an interstate compact, that it did not have the discretion to impose a sentence concurrent with a sentence imposed by an Ohio court. More recently, this Court articulated the following general rule: "[A] defendant is entitled to resentencing where a sentencing court fails to exercise its discretion because of a mistaken belief in the law." *Sexton*, 250 Mich at 228 (internal quotation marks and citation omitted).

At sentencing, the prosecutor and defense counsel agreed that prison time was mandatory for a CSC III conviction, and the trial court ultimately agreed with counsel after reviewing MCL 771.1(1) at the suggestion of the prosecutor. Defendant is correct that the plain language of MCL 771.1(1) does not require a prison sentence for a CSC III conviction. Instead, the statute provides that a court may not place a defendant convicted of CSC III on *probation*:

> In all prosecutions for felonies, misdemeanors, or ordinance violations *other than* murder, treason, *criminal sexual conduct in the first or third degree*, armed robbery, or major controlled substance offenses, if the defendant has been found guilty upon verdict or plea and the court determines that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant suffer the penalty imposed by law, the court may place the defendant on probation under the charge and supervision of a probation officer. [MCL 771.1(1) (emphasis added).]

However, it appears that the trial court did have the discretion to sentence defendant to jail instead of prison because the minimum range recommended by the sentencing guidelines (12 to 20 months) was within a straddle cell. In relevant part, MCL 769.34 provides:

> (4) Intermediate sanctions shall be imposed under this chapter as follows:
>
> * * *
>
> (c) If the upper limit of the recommended minimum sentence exceeds 18 months and the lower limit of the recommended minimum sentence is 12 months or less, the court shall sentence the offender as follows absent a departure:
>
> > (*i*) To imprisonment with a minimum term within that range.
> >
> > (*ii*) To an intermediate sanction that may include a term of imprisonment of not more than 12 months. [MCL 769.34(4)(c)].

"Intermediate sanction" is defined as "probation or any sanction, other than imprisonment in a state prison or state reformatory, that may lawfully be imposed." MCL 769.31(b). The

nonexclusive list of intermediate sanctions provided by the statute expressly includes both probation and jail. MCL 769.31(b)(*i*)-(*xv*). Thus, the trial court did have the discretion to sentence defendant to jail or prison under MCL 769.34(4)(c)(*ii*) even though the trial court was prohibited from imposing *probation* for defendant's CSC III conviction pursuant to MCL 771.1(1).

However, contrary to defendant's arguments, the trial court did indicate it was using its discretion when it sentenced defendant to prison. Following a discussion of whether prison was mandated, the trial court stated that that it " . . . would probably be inclined to [impose a prison sentence] anyway even if it weren't for the statute mandating it." Thus, even though the trial court was acting under the impression that it did not have the discretion to sentence defendant to jail in lieu of prison, the trial court clearly indicated that even if prison were not mandated, it would so sentence defendant. Furthermore, the minimum sentence imposed by the trial court, i.e., one year imprisonment, was within the minimum range recommended by the sentencing guidelines, i.e., 12 to 20 months, and defendant has not established that the trial court incorrectly scored the sentencing guidelines or that the trial court relied on inaccurate information in determining defendant's sentence, since the trial court indicated that it was inclined to impose a prison term regardless of whether such a sentence was required by statute. MCL 769.34(10). Thus, we affirm defendant's sentence of 1 to 15 years' imprisonment.

## IV. SUFFICIENCY OF THE EVIDENCE

Next, defendant contends that there was insufficient evidence at trial to support his CSC III conviction. When a defendant challenges the sufficiency of the evidence on appeal, the trial court record is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court must determine whether a reasonable trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt, reviewing the evidence in the light most favorable to the prosecution. *Id.*

"[A] person is guilty of CSC III if [(1)] he or she engages in sexual penetration [(2)] with another person [(3)] whom he or she knew or had reason to know was mentally incapable, mentally incapacitated, or physically helpless." *People v Cox*, 268 Mich App 440, 443; 709 NW2d 152 (2005), citing MCL 750.520d(1)(c). Under MCL 750.520a, "'Physically helpless' means that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m). It is clear from the record, and neither party disputes, that defendant engaged in sexual penetration with the victim, which establishes the first and second elements of the offense. However, defendant argues that the prosecution failed to establish the third element of the offense, that the alleged victim was physically helpless, because the evidence at trial demonstrated that "[the victim] was awake, able to communicate, able to express her thoughts and feelings, and by her actions and willingness to have sexual intercourse, . . . voluntarily engaged in the sexual act."

Sufficient evidence exists for a reasonable fact-finder to conclude that defendant knew or should have known that the alleged victim was physically helpless when the penetration occurred. MCL 750.520d(1)(c); *Cox*, 268 Mich App at 443. Circumstantial evidence and reasonable inferences arising from the evidence presented can provide sufficient evidence to establish the elements of a crime. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243

(2013). At trial, the alleged victim testified that when she woke up on the couch, she discovered that her pants were pulled down to her ankles and a man's penis was inside her vagina, providing direct evidence that she was, in fact, asleep when the penetration occurred. Further, the alleged victim testified that, after drinking and smoking marijuana, she did not remember moving from the backyard to the couch inside the residence, suggesting that she remained deeply asleep or inert throughout the evening and would not have appeared awake even if defendant actually attempted to wake her up. The alleged victim's boyfriend also confirmed that the alleged victim was either "out of it" or sleeping for much of the evening and was consistently groggy or unresponsive when anyone tried to move her or wake her. Additionally, her boyfriend testified that she did not say anything or respond at all when he shook her a few times and called her name repeatedly before he went to bed in the next room, which was assumedly a short time before defendant claims to have brought pillows and blankets to the victim immediately prior to the intercourse. Given the victim's testimony and the other witnesses' awareness of the alleged victim's physical condition that evening, a reasonable fact-finder could infer from the evidence that defendant knew or had reason to know that she was asleep, and therefore physically helpless under the statutory definition, when the penetration occurred. MCL 750.520d(1)(c); *Cox*, 268 Mich App at 443.

Contrary to the alleged victim's testimony, defendant testified that the victim was awake, aware, and able to communicate when the penetration occurred because he woke her up in order to move her legs back onto the couch; she motioned for defendant to come down onto the couch; she pulled down her pants herself; she actively participated in the sexual intercourse; and she never expressed that she did not want to participate in the act, even though she did not speak to defendant during or after the incident. However, despite this conflicting testimony, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). In fact, the trial court explicitly stated on the record the reasons why he found the victim's testimony to be more credible than defendant's testimony. Therefore, given the testimony in the lower court record, there is sufficient evidence, when viewed in the light most favorable to the prosecution, for a reasonable trier of fact to determine that the prosecutor proved the elements of CSC III beyond a reasonable doubt. *Meissner*, 294 Mich App at 452.

Affirmed, but remanded for the ministerial task of amending the PSIR. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

-7-