*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 22, 2020

v

No. 347869
Berrien Circuit Court
LC No. 2018-003187-FH

KYLE WAYNE ENDER,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Defendant, Kyle Wayne Ender, appeals as of right his jury trial conviction of "custodial interference" kidnapping, MCL 750.350a(1). The trial court sentenced defendant to 30 days' imprisonment and 12 months' probation. This matter arose out of defendant's apparently reasonable concerns that one of his children might be harmed by the other while in the custody of their mother, which, unfortunately, resulted in defendant physically preventing the mother from picking the children up from his care and refusing to cease violating the parties' custody order. We affirm.

## I. BACKGROUND

Defendant and his ex-wife, TM, had two children together, AE and EE. Defendant and TM were together for 13 years, and when they split, they entered a custody agreement. TM received full physical custody of both AE and EE, and defendant received parenting time under the custody order. In the spring of 2018, there were concerns about AE's ability to watch EE unsupervised. AE was very large and strong, and he had a number of behavioral difficulties involving belligerence, threatening or violent conduct, and frequently losing his temper. EE began to experience injuries and bruises that she implausibly blamed on falling, but defendant and his fiancée suspected (correctly, as it would turn out) that EE was covering for AE.

Defendant testified regarding an incident in which CPS visited TM's home and found AE and EE unsupervised after they were returned to TM's care. Specifically, defendant testified that a CPS worker told him that CPS showed up to TM's home and found AE asleep. EE answered the door and allowed CPS to walk into the house. CPS said that EE should not be cared for by AE

because EE let strangers into the house while AE was supposed to be watching her. Additionally, TM testified that sometime after she received her children back, Dwayne Johnson, a CPS caseworker from Kalamazoo, told her that AE and EE should not be left at home together alone because of the allegations against AE.

In the summer of 2018, while AE and EE were with defendant, there was an incident in which AE lost control of his temper and then threatened suicide. Both TM and defendant filed a police report and contacted Children's Protective Services (CPS) after the incident. About two weeks later, AE pinched EE so hard that he bruised her and caused her to cry. A few days later, AE and EE were supposed to return to the care of TM. However, defendant prevented TM from picking up the children because he did not feel that they were safe with her. The police contacted defendant about violating the court order and encouraged him to return the children to TM's care, but defendant refused. Eventually, defendant was charged and arraigned for kidnapping, and at that time, the children were returned to TM's care.

Shortly after defendant's trial counsel started to give her closing argument, the prosecution objected, accusing defense counsel of stating facts not in evidence. Defense counsel was discussing how defendant failed to return the children to TM because it was not safe having AE watching EE, and how soon after the children were returned to TM, CPS discovered that AE was sleeping instead of watching EE. Additionally, because AE was sleeping, EE let strangers, CPS workers, into the house. Defense counsel protested that defendant had actually testified to that event, but the trial court sustained the objection. Defense counsel then proceeded to argue, in part, that despite Johnson telling MT not to leave the children alone, defendant "knew that this would happen, he knew that they would continue to be left alone at their mother's house and he took action, because for months coming up to that, he had been complaining and he knew there would be problems, and he knew it, and he took action."

After the jury began deliberations, the trial court reviewed the trial testimony and realized that it had been wrong and defendant had testified as defense counsel had argued. After discussing the issue with both parties, the trial court called the jury back into the courtroom and informed it that the court had mistakenly sustained the prosecution's objection and that the facts were in the record. Less than an hour later, the jury came back with its verdict, finding defendant guilty. At sentencing, the trial court expressed frustration with the matter, opining that defendant's concerns had been reasonable, but his manner of addressing those concerns was not. The trial court particularly noted that defendant could have permitted TM to take just EE, which would have kept EE safe from AE; and also that AE had also injured EE while in his own care, undermining any belief that the children were safer with him than with TM.

After defendant timely appealed, we remanded this matter for an evidentiary hearing to address three concerns: (1) whether defendant received ineffective assistance of counsel because his trial counsel failed to move for a mistrial after the trial court erroneously sustained an objection during closing argument, (2) whether defendant received ineffective assistance of counsel because he received allegedly incomplete or flawed advice during plea negotiations, and (3) whether the trial court had been aware that an alternative sentence of deferred probation was available and would have imposed that sentence upon request. On remand, defendant declined to have a hearing regarding the second issue. The trial court determined that it corrected its mistake in sustaining the prosecutor's objection by specifically telling the jury that it had been mistaken, and in any

event defense counsel had been able to convey the gravamen of the defense theory to the jury despite the objection. It also observed that during the proceedings, defendant's reasonable concerns about harm to EE had been conveyed to the jury, which was the crux of defendant's argument. It therefore concluded that no mistrial would have been warranted, even if a mistrial had been requested. The trial court also determined that it had probably been aware of the delayed sentencing option, but it would not have granted that alternative in any event.

## II. STANDARDS OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The defendant has the burden of establishing that he was denied effective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The defendant must "show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation omitted). For the first requirement, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). This Court should not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 192 (2010).

This Court reviews for clear error a trial court's findings of fact and de novo questions of constitutional law. *LeBlanc*, 465 Mich 579. "A trial court's factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018) (quotation omitted).

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Ortiz-Kehoe*, 237 Mich App 508, 513-514; 603 NW2d 802 (1999). This is otherwise referred to as "manifest necessity." See *People v Rutherford*, 208 Mich App 198, 201-202; 526 NW2d 620 (1994). No precise test for "manifest necessity" exists, but in general, trial courts should "declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction . . . would have to be reversed on appeal due to an obvious procedural error in the trial." *Id.* at 202 (quotation marks and citation omitted). We review a trial court's decision whether to grant or deny a mistrial for an abuse of discretion. *Ortiz-Kehoe*, 237 Mich App at 513. A trial court "abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 645; 780 NW2d 321 (2009). This Court also reviews for an abuse of discretion a trial court's sentencing decisions. *People v Skinner*, 502 Mich 89, 134-136; 917 NW2d 292 (2018).

## III. EFFECTIVE ASSISTANCE – MISTRIAL

Defendant first argues that he was denied effective assistance of counsel when defense counsel failed to move for a mistrial after the prosecution improperly objected to its closing argument. We disagree.

We need not consider whether trial counsel should have requested a mistrial, because we are persuaded that there was no manifest necessity for a mistrial. Because no adequate grounds existed for granting any such request, doing so would have been futile. Counsel cannot be faulted for declining to make a frivolous motion. See *Ericksen*, 288 Mich App at 201.

The United States Supreme Court recognized that closing arguments are important because they "serve[] to sharpen and clarify the issues for resolution by the trier of fact in a criminal case," and "it's only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole." *Herring v New York*, 422 US 853, 862; 95 S Ct 2550; 45 L Ed 2d 593 (1975). Additionally, "for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt." *Id*. However, we agree with the trial court's assessment of the record: despite the objection, defense counsel did proceed to make the intended point to the jury, that defendant's concerns turned out to be not only reasonable, but affirmatively proved correct.

Additionally, as the trial court noted, during trial, it was evident that defendant had valid concerns about AE being unsupervised with EE. Multiple witnesses testified at trial about how they were concerned about AE's behavior and the mysterious bruises that EE had on her body. The jury was fully informed about the incident in which AE became upset and threatened suicide. Additionally, the jury was fully informed about the incident in which AE pinched EE so hard that she cried and received a bruise. However, the problem was how defendant addressed his concerns. He knowingly kept the children in violation of the custody order and a police order, which meant that defendant still violated the kidnapping statute. See MCL 750.350a(1). Additionally, although defendant had valid concerns about AE harming EE, he kept both children together, and there was proof in the record that AE was able to harm EE even with defendant home.

Furthermore, after the trial court realized that there was evidence in the record about AE sleeping when he was supposed to be watching EE, the trial court issued a curative instruction to the jury. The trial court informed the jury that the court made a mistake by sustaining the prosecution's objection and that it should consider the facts to which the prosecution objected. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). We are uncertain of the trial court's conclusion that its manner of correcting its mistake "elevated [defense counsel's] credibility." However, the record shows that defense counsel successfully made the intended argument, and to the extent defendant contends defense counsel had been tarred as a liar, counsel was at least adequately rehabilitated. We find no abuse of discretion in the trial court's determination that it would not have granted a mistrial if a mistrial had been requested.

-4-

## IV. INEFFECTIVE ASSISTANCE – PLEA NEGOTIATIONS

Defendant next argues that he received ineffective assistance of counsel during plea negotiations. On this record, we are unable to agree.

Because defendant voluntarily withdrew his request for an evidentiary hearing as to this issue, our review is limited only to mistakes apparent from the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). Furthermore, because defendant has already had his opportunity to have an evidentiary hearing, we need not consider whether to grant such a remand. Cf. *People v Moore*, 493 Mich 933, 933; 825 NW2d 580 (2013); see also *People v Simon*, 174 Mich App 649, 657; 436 NW2d 695 (1989) ("We decline to allow defendant an appellate parachute fashioned from the fiber of his own agreement"). We therefore will not consider the affidavits defendant has submitted on appeal: defendant received a full and fair opportunity to expand the record properly, and he chose not to do so. Nevertheless, we choose to give defendant the benefit of the doubt, so we construe defendant's decision as only waiving his right to have this Court consider evidence not in the original record. We do not construe defendant's decision as having waived this Court's consideration of the issue itself.

Defendant argues that "the only reference on the record to a plea offer came at the preliminary examination," where he contends that it was only mentioned in passing and without much detail. He contends that he received ineffective assistance of counsel because he did not understand the significance of the offer, which would have resulted in a non-felony conviction. He also contends that trial counsel was unaware of any such plea offers.

Preliminary examination was held on August 30, 2018. At the beginning of the hearing, the following exchange occurred:

> *The Court*: Was there an offer made?
>
> [*The Prosecution*]: Your Honor, I did convey an offer to [defense counsel's] colleague was here for the pre-exam conference.
>
> *The Court*: Um-hum.
>
> [*The Prosecution*]: It would either be to, as charged, under the statute. There's a probation that the defendant could comply with, such—kind of like a 769.4a, or, to an Attempted.
>
> *The Court*: Okay. So you've discussed that with your attorney, is that correct, Mr. Kyle—or, Mr. Enders (sic), rather?
>
> *The Defendant*: Yes.
>
> *The Court*: Alright. And you don't wanna partake in that, right?
>
> [*The Defendant*]: No, sir.

*The Court*: Alright. I just wanna make sure you understand that once the prelim starts, that that plea offer is not on the table anymore, whether or not the prosecutor offers it down the road, or something better, something worse, is really up to her; you can't come back to me in a month or two months and say, 'Judge Cotter, make her give me that deal she offered me before,' it doesn't work that way. Do you understand that?

*The Court*: Alright. Then we are ready to proceed.

We agree with defendant that the prosecutor's explanation of the nature of the plea was confusing, if not incomprehensible. However, it was not the only reference made to the plea.

After the preliminary examination, defendant was arraigned on October 8, 2018, on other charges. Defendant was present at that hearing. At that time, the prosecutor reiterated that although the cases were not joined, there remained a plea offer on the table. Under that offer, defendant could plead guilty in this matter, in exchange for which defendant would receive "a special probation," and if "he completed it it wouldn't go on his record." Additionally, two of the three other charges would be dismissed subject to restitution only. Thus, there was actually a second mention of the plea offer on the record. Importantly, the second discussion, which was made in defendant's presence, clearly explained the practical upshot: a guilty plea would mean defendant could avoid having a felony on his record.[1]

Thus, there was a clear mention of the plea offer on the record, which would have communicated its gravamen to defendant and to trial counsel. To the extent defendant argues that he was never told of the plea offer, or the plea offer was never properly explained to him, or that his trial counsel gave him flawed advice regarding the plea offer, those facts are simply not reflected in the record. *Riley*, 468 Mich at 139. On this record, we are unable to conclude that defendant received ineffective assistance of counsel regarding plea negotiations.

## V. SENTENCING

Defendant finally argues that the trial court failed to consider granting him a delayed sentence and that a delayed sentence was appropriate in this case. We disagree.

"Generally, a defendant is entitled to resentencing [when] a sentencing court fails to exercise its discretion because of a mistaken belief in the law." *People v Sexton*, 250 Mich App 211, 228; 646 NW2d 875 (2002) (quotation omitted). Indeed, it is "well-settled that a trial judge commits reversible error if he or she does not recognize that he or she has discretion and therefore fails or refuses to exercise it." *People v Merritt*, 396 Mich 67, 80; 238 NW2d 31 (1976). Additionally, "the use of inaccurate information at sentencing may violate defendant's constitutional right to due process." *People v Hoyt*, 185 Mich App 531, 533; 462 NW2d 793

---

[1] Defendant did not state anything about the plea offer on the record at the October 8, 2018, hearing, but given defendant's waiver of any expansion of the record, we regard it as strong evidence that the plea offer had been explained to defendant in a comprehensible manner not apparent from the August 30, 2018, hearing transcript alone.

(1990). Thus, the fact that a sentence is within the appropriate sentencing guidelines range does not insulate it from remand if the trial court relied on inaccurate information in imposing that sentence. See *People v Jackson*, 487 Mich 783, 792; 790 NW2d 340 (2010).

Pursuant to MCL 750.350a(4), the trial court may forgo entering a judgment of guilty against a parent convicted under MCL 750.350a(1), defer proceedings, and place the parent on probation. If the parent successfully completes his or her terms and conditions of probation, the trial court must dismiss the proceedings against the parent. See MCL 750.350a(4). Specifically, MCL 750.350a(4) provides as follows:

> When a parent who has not been convicted previously of a violation of section 349, 350, or this section, or under any statute of the United States or of any state related to kidnapping, pleads guilty to, or is found guilty of, a violation of this section, the court, without entering a judgment of guilt and with the consent of the accused parent, may defer further proceedings and place the accused parent on probation with lawful terms and conditions. The terms and conditions of probation may include participation in a drug treatment court under chapter 10A of the revised judicature act of 1961, 1961 PA 236, MCL 600.1060 to 600.1084. Upon a violation of a term or condition of probation, the court may enter an adjudication of guilt and proceed as otherwise provided. Upon fulfillment of the terms and conditions of probation, the court shall discharge from probation and dismiss the proceedings against the parent. Discharge and dismissal under this subsection shall be without adjudication of guilt and is not a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime, including any additional penalties imposed for second or subsequent convictions. There may be only 1 discharge and dismissal under this section as to an individual.

Defendant was charged with kidnapping under MCL 750.350a(1). As discussed, the possibility of "a probation" or "a special probation" alternative sentence was stated twice on the record while discussing defendant's plea offer. No such alternative was specifically mentioned during sentencing, or in the presentence investigation report (PSIR). However, the PSIR did note that defendant was eligible for probation, which is what the Department of Corrections recommended. Defendant's recommended minimum sentence range was 0 to 9 months' imprisonment.

At the sentencing hearing, the prosecution asserted that 18 days' imprisonment and 12 months' probation was appropriate, and defense counsel requested that the trial court follow the PSIR's recommendation. As noted, the trial court made a point of admonishing defendant for having had reasonable concerns but an unreasonable manner of addressing those concerns. It sentenced defendant to 30 days' imprisonment and one year of probation.

At the remand hearing, defendant argued, through counsel, that he "would have been the perfect candidate" for delayed sentencing under MCL 750.350a(4). Defendant then asked the trial court "to make a finding that, had it been aware that that had been an option, that it would have done so and to allow Mr. Ender that deferred probation at this time." The prosecution disputed the apparent assumption that the trial court was unaware of the sentencing alternative just because the trial court had not mentioned that option specifically. The prosecution pointed out that the option had been referenced twice on the record when the plea offers were made. Additionally, the

-7-

prosecution argued that delayed sentencing would not have been appropriate in this case because defendant did not live "a crime-free life leading up to this." The prosecution noted that defendant had been convicted of several misdemeanors and he already "had the benefit, at least once, of a deferred probation where the charge was dismissed." Defendant disputed the significance of his prior convictions, pointing out that none of the misdemeanors had been assaultive, and the deferral had been "a misdemeanor minor in possession deferral when he was 18 years old." Nevertheless, the prosecution noted that the trial court's findings before it gave defendant's sentence indicated that it would not have given defendant a delayed sentence.

The trial court admitted that it had no direct recollection "whether [it] ever took note of this specific provision" regarding delayed sentencing, but it did recall looking at the statute. The trial court also recognized that it had been told about the possibility of delayed sentencing in the context of plea offers. It reiterated that it did not recall whether it "took specific note of that on [its] own," but that its practice was to "go back and read these statutes" before sentencing. It held that it would have been aware of the delayed sentencing option, and even if it had been requested, it "would not have given him this deferred probation, no matter what." The trial court explained that its reasoning was twofold. First, defendant violated both a court order and a direct order from a police officer. Secondly, defendant failed to protect EE from AE himself, and he had the option of complying with the court order by giving only EE back to MT, which would have actually accomplished his stated goal of protecting her.

The nature of a plea offer is intrinsically that the defendant expects to receive some kind of benefit in exchange for entering a plea, potentially a benefit that would not be available in the event the defendant is found guilty. We are therefore not persuaded that the vague references to "a probation" or "a special probation" would have informed the trial court that delayed sentencing was a statutory option available after a jury trial conviction. Nevertheless, we trust the trial court's policy of always re-reading the applicable statutes, and the delayed sentencing option is also found within that same custodial interference kidnapping statute. We note as well that the trial court's commentary seemingly alludes to MCL 750.350a(7), which states that it "is a complete defense under this section if a parent proves that his or her actions were taken for the purpose of protecting the child from an immediate and actual threat of physical or mental harm, abuse, or neglect." The trial court specifically indicated its belief that defendant's conduct reflected a desire for control, rather than a true desire to protect the children. It is reasonable to conclude that the trial court read subsection (4) on its way to subsection (7). We are therefore unable to find clear error in the trial court's determination that it was aware that delayed sentencing was an option. Thus, defendant was not sentenced on the basis of inaccurate information or a mistake of law.

Additionally, the record indicates and supports the trial court's finding at the remand hearing that a delayed sentence would not have been given even if it had been requested. It is readily apparent from the trial court's comments at sentencing that it found defendant's conduct deeply frustrating, all the more so given that AE's danger to EE was substantiated. The purpose of delayed sentencing provisions is to permit trial courts discretion to provide "an ultimately noncriminal sanction for first-time offenders who commit less serious . . . crimes." *People v Ware*, 239 Mich App 437, 441; 608 NW2d 94 (2000). The trial court clearly viewed defendant's conduct as serious, especially his violation of an order from the police. At the remand hearing, the trial court further observed, consistent with its statements at sentencing, that it might have overlooked merely partially violating the court order by keeping AE and sending only EE back to MT. We

are, again, unable to find clear error in the trial court's finding that the delayed sentencing provision would have been appropriate in this matter.

Defendant also argues that he was denied effective assistance of counsel because defense counsel failed to request a delayed sentence. However, because the trial court would not have granted any such request and would not have thereby erred, any motion from defense counsel regarding delayed sentencing would have been futile or meritless. See *Ericksen*, 288 Mich App at 201. Failing to raise a futile or meritless objection does not rise to the level of ineffective assistance of counsel. See *id*.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Stephen L. Borrello